**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-02747-001-TUC-JCH (EJM) |
| Plaintiff, | **ORDER** |
| v. | |
| Viorel Pricop, | |
| Defendant. | |

Defendant is charged with three counts of Arson of Property Used in Interstate Commerce in violation of 18 U.S.C. § 844(i). Doc. 1. Before the Court is Defendant's Motion to Suppress All Cell Phone Data (Doc. 29) and Supplement to Motion to Suppress All Cell Phone Data (Cell Phone Dump) (Doc. 48). The Court heard oral argument on February 26, 2025, and took the matter under advisement. *See* Doc. 84. For the following reasons, the Court will deny Defendant's Motion and Supplement.

**I.   Relevant Background**

This case involves a series of Swift Transport ("Swift") trailers that caught fire between June 22, 2020, and March 1, 2022. *See* Doc. 29 at 2; Doc. 53 at 6. Three of the fires occurred in Arizona. *Id.* Fifteen fires occurred between June 22, 2020, and January 14, 2022. Doc. 29 at 2–4.

On January 31, 2022, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents applied for an 18 U.S.C. § 2703(d) order ("Tower Dump Order #1)

requesting tower dumps[1] for the cell towers serving the locations of fires 10 through 15. Doc. 29 at 4. According to the supporting affidavit, individual investigations into each fire found the majority were started at the rear tires or back end of the trailers, and rags, paper, or cardboard and ignitable liquid were found at several of the scenes. *See* Doc. 41-1 at 5–8.[2] The subsequent order required major cell service carriers to provide information on the subscribers who accessed the cell towers serving the locations of fires 10 through 15 for one hour around the times of the fires. *See* Doc. 41 at 2–3.

Three more fires (fires 16 through 18) occurred between February 7, 2022, and February 9, 2022. Doc. 29 at 4. On February 15, 2022, ATF agents applied for and obtained a 2703(d) order ("Tower Dump Order #2") for tower dumps for the cell towers serving the locations of fires 16 through 18 for approximately three hours around the times of the fires. Doc. 49 at 3–4. The supporting affidavit included the information on all 18 fires. *See* Doc. 41-2 at 5–9. Preliminary investigations showed fires 16 through 18 originated at the rear of the trailers, and rags or cloth material were found between the wheels of the trailers at fires 16 and 17. Doc. 41-2 at 7–8.

The 19th and 20th fires occurred on February 20, 2020. Doc. 29 at 5. On February 23, 2022, ATF agents applied for and obtained a 2703(d) order ("Tower Dump Order #3") for tower dumps for the cell towers serving the locations of fires 19 and 20 for three-and-a-half-hours around the times of the fires. Doc. 41 at 4. The supporting affidavit included the information for all 20 fires. *See* Doc. 41-3 at 5–8. Preliminary investigations showed fires 19 and 20 started near the trailers' wheels, and cloth material was found between the wheels of both trailers. Doc. 41-3 at 9–10.

The 21st and 22nd fires occurred on February 28, 2022, and the 23rd fire occurred on March 1, 2022. Doc. 29 at 5–6. On March 7, 2022, ATF agents applied for and obtained a 2703(d) order ("Tower Dump Order #4") for tower dumps for the cell towers serving the

---

[1] Each of the tower dump warrants authorized agents to obtain (1) the telephone number and unique identifiers for each wireless device within the vicinity of the cell tower that registered with the tower; (2) the "sector" or "face" of the tower that received the signal/ping; and (3) the date, time, and duration of the communication.
[2] All citations are to CM/ECF page numbers unless otherwise specified.

- 2 -

locations of fires 21 through 23 for two or three hours near the times of the fires. Doc. 41 at 4–5. The supporting affidavit included the information for all 23 fires. *See* Doc. 41-4 at 5–11. Preliminary investigations showed fires 21 through 23 originated at the rear of the trailers, and cloth material suspected to contain ignitable liquid was found between the wheels of the trailers. *Id.* at 10–11. Together, the cell tower dumps showed a Mobile Station Integrated Services Digital Network Number, 2569610723185305, ("Geotab") was present near nine fires, numbers 12, 14, 16, 17, 18, 19, 20, 21, and 22. Doc. 29 at 6.

## II. Analysis

Defendant asks the Court to suppress "all evidence deriving from the execution of the tower dump warrants." Doc. 48 at 21. Defendant argues the tower dumps violated the Fourth Amendment because "the warrants[3] . . . lacked probable cause" and were overbroad. Doc. 29 at 1–2.

### A. The Tower Dumps Were Not Fourth Amendment Events

Defendant first argues tower dumps are a search under the Fourth Amendment and require probable cause. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects certain expectations of privacy when an individual "'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). In *Carpenter*, the Supreme Court held "that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [Cell Site Location Information ("CSLI")]." *Id.* at 309–10.

///

---

[3] Defendant refers to the Tower Dump Orders as "warrants," but orders under 18 U.S.C. § 2703(d) are distinct from traditional search warrants. Under Section 2703(d), "[a] court order . . . may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are *reasonable grounds to believe* that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. *Id.* (emphasis added).

- 3 -

1    *Carpenter*'s holding was narrow. *See Id.* at 315. The Court addressed only "whether
2    the Government conducts a search under the Fourth Amendment when it accesses historical
3    cell phone records that provide a *comprehensive chronicle of the user's past movements*."
4    *Id.* at 300 (emphasis added). In holding that obtaining CSLI data from a wireless carrier is
5    a search, the Court emphasized the invasiveness of the government accessing "the whole
6    of [an individual's] physical movements" and an "all-encompassing record of the holder's
7    whereabouts." *Id.* at 311; *see also id.* at 313 ("[W]hen the Government accessed CSLI . . .
8    it invaded Carpenter's reasonable expectation in the whole of his physical movements.").
9    The Court specifically declined to "express a view on matters not before [it]: real time
10   CSLI or 'tower dumps.'" *Id.* at 316.

11   Since *Carpenter*, courts have split on whether cell tower dumps are Fourth
12   Amendment events requiring a warrant. *See, e.g.*, *United States v. Walker*, No. 2:18-CR-37,
13   2020 WL 4065980, at *23 (E.D.N.C Jul. 20, 2020) ("In light of the significant differences
14   between a tower dump CLSI and long term CSLI targeted at the whole of an individual's
15   movements, as highlighted by the court's decision in *Carpenter*, the court finds no basis
16   for attaching a Fourth Amendment interest to tower dump CLSI."); *United States v.*
17   *Williams*, 741 F. Supp. 3d 642, 651 (E.D. Mich. 2024) ("There is no reasonable expectation
18   of privacy in the records received in this tower dump—a probable cause search warrant
19   under the Fourth Amendment was not required."). *But see United States v. Medina*, 712 F.
20   Supp. 3d 226, 246 (D.R.I. 2024) ("Defendants have a reasonable expectation of privacy in
21   their short-term CSLI, and thus a warrant was required for the Tower Dump Order."), *rev'd*
22   *on other grounds*, 125 F. 4th 310 (1st Cir. 2025).

23   The data produced in a cell tower dump is qualitatively different from the data
24   produced by continuous CSLI monitoring. The Tower Dump Orders gave ATF access to,
25   for periods of three and a half hours or less, a list of the devices that connected to the
26   towers, which tower the devices connected to, and length of the communication. Doc. 41
27   at 2. This is different from the continuous monitoring of a single person's location for
28   multiple days at issue in *Carpenter*. *Carpenter* required a warrant for CSLI data because

monitoring "the whole" of an individual's physical movement is highly invasive. Because the tower dumps here did not allow ATF access to "the whole" of anyone's movement, or anything close, the Court will not extend *Carpenter* to require probable cause for tower dumps.

### B. Were the Tower Dumps a Search, the Good Faith Exception Applies

"The good-faith exception excuses unlawful searches that are the "'result of nonculpable, innocent police conduct.'" *United States v. Holmes*, 121 F.4th 727, 734 (9th Cir. 2024) (quoting *Davis v. United States*, 564 U.S. 229, 240 (2011)). Law enforcement conduct is innocent and the good faith exception applies when law enforcement acts in compliance with binding precedent. *Davis*, 564 U.S. at 240. The Ninth Circuit has held the good faith exception applied where the government obtained a defendant's CSLI via 2703(d) order before *Carpenter* was decided. *See United States v. Korte*, 918 F.3d 750, 758 (9th Cir. 2019). The Court reasoned in part that 18 U.S.C. § 2703(d) explicitly allowed the government to retrieve the CSLI by court order, and that provision was lawful at the time of retrieval. *Id.* "Any 'defect in the [statute],' therefore, 'was not sufficiently obvious so as to render [the government's] reliance upon the statute objectively unreasonable.'" *Id.* at 758–59 (quoting *Illinois v. Krull*, 480 U.S. 340, 359 (1987)).

Defendant argues the good faith exception does not apply because the agents' reliance on the orders was unreasonable given the obvious lack of probable cause. *See* Doc. 29 at 17–18. The Tower Dump Orders did not explicitly find ATF had established probable cause because those orders were based on 18 U.S.C. § 2703(d)'s "reasonable grounds" standard. Here, the affidavits clearly established reasonable grounds to believe the tower dumps could lead to relevant information about the series of fires ATF was investigating. Each fire involved a Swift trailer, and the frequency of fires was unprecedented for Swift. *See, e.g.*, Doc. 41-1 at 3–5. Many of the fires also originated at the same location on the trailers, and there was evidence suggesting several fires were started intentionally. *See* Doc. 41-5. This pattern gave rise to a reasonable belief that the fires were connected, and the tower dumps may identify a single device present near

multiple fires, i.e., evidence of a crime. Indeed, given the strength of the evidence, the agents could have established probable cause sufficient to secure search warrants. Instead, they employed the statutory vehicle provided by Congress to secure the tower dumps. Neither the Supreme Court nor the Ninth Circuit has weighed in on the standard required to obtain a tower dump, giving the agents no reason to doubt Section 2703(d)'s validity. Given the circumstances, the agents' choice to obtain the Orders under Section 2703(d)'s reasonable grounds standard further demonstrates good faith.[45]

### C. Federal Rule of Criminal Procedure 41(d)

Defendant's Supplement argues that because there is no recording of the communications between the affiant and judges in support of the Tower Dump Orders, ATF violated Federal Rule of Criminal Procedure 41. Rule 41(d) outlines the requirements for obtaining a warrant and provides that "[t]estimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit." Fed. R. Crim. P. 41(d)(2)(C).

2703(d) orders are not search warrants, and Defendant cites no authority establishing Rule 41(d)(2)(C) applies to such orders. The Court assumes it does not, as Rule 41(d) outlines the requirements for obtaining a *warrant*, and Rule 41(d)(1) explicitly requires probable cause. *See also* 18 U.S.C.§ 2703(c) (the government can require a service provider to disclose records not including the contents of communications if it "obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure" *or* "obtains a court order for such disclosure under subsection (d) of this section"). Regardless, Defendant does not allege and provides no evidence that the issuing judges

---

[4] Many of Defendant's arguments that the evidence derived from the tower dumps should be suppressed require the Court to find that tower dumps are a Fourth Amendment event and require probable cause. *See* Doc. 48 at 10–17 (cell tower dumps violate the particularity requirement for search warrants; the orders lacked probable cause; valid search warrants require minimization and protections for those not connected to the crime). Because the Court will not assume tower dumps require probable cause, and the good faith exception applies regardless, the Court will not address these arguments.

[5] Defendant's Motion requests an evidentiary hearing because the Court "must make factual findings as to the basis of probable cause for the tower dumps." Doc. 29 at 20. Because probable cause was not required, there is no need for an evidentiary hearing.

took testimony in support of the Orders. Accordingly, no recordings were required.

### D. Violation of Defendant's Fourth Amendment Rights

Defendant argues the Tower Dump Orders violated his Fourth Amendment rights because they "authorized the government to track 1.2 million people's movements which included Pricop's location and movements without substantial evidence to show that a crime had been committed." Doc. 48 at 7. But "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381–82 (2014) (quoting *Brigham City v. Stuart*, 547 U. S. 398, 403 (2006)). Section 2703(d) allows the government to obtain tower dumps by court order upon a showing of "reasonable grounds to believe that the contents of [the information sought] are relevant and material to an ongoing criminal investigation." As discussed above, the supporting affidavits satisfied this standard. The tower dumps were thus lawful and reasonable.

## III. Order

Accordingly,

**IT IS ORDERED denying** Defendant's Motion to Suppress All Cell Phone Data (Doc. 29) and Supplement to Motion to Suppress All Cell Phone Data (Cell Phone Dump) (Doc. 48).

Dated this 25th day of March, 2025.

John C. Hinderaker
United States District Judge