**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Viorel Pricop,<br><br>  Defendant. | No. CR-22-02747-001-TUC-JCH (EJM)<br><br>**ORDER RE: DOCS. 35 AND 76** |

On December 9, 2024, the United States filed a "Notice of Intent to Introduce Other Acts Evidence (Prior Conviction)." Doc. 26. Before the Court are Defendant's "Motion to Suppress Other Act Evidence (Prior Conviction)" and "Motion in Limine to Preclude (Prior Conviction)." Docs. 35 and 76. The matters are fully briefed. Docs. 39, 54, 56, and 81. For the following reasons, the Court will grant in part and deny in part Defendant's motions.

**I.    Background[1]**

Between 2010 and 2014, Swift Transportation experienced a series of tractor trailer break-ins and thefts of high-value goods. In response, Swift deployed "bait" trailers containing goods fitted with hidden GPS tracking devices. In February 2015, Swift investigators tracked some stolen goods to a storage facility in Michigan. Swift contacted Michigan State Police, who then observed Defendant loading the stolen goods into a storage unit owned by Defendant. Officers served a search warrant on Defendant's home

---

[1] Summarized from the government's Notice of Intent to Introduce Other Acts Evidence (Prior Conviction) (Doc. 26), Defendant's Motion to Suppress Other Act Evidence (Doc. 35), and the government's Response to Defendant's Motion to Suppress Other Act Evidence (Doc. 54).

and located additional stolen property there. Defendant and his family disappeared to Canada, but Defendant was arrested approximately one year later when he crossed the border into Pennsylvania. An investigator from Swift confronted Defendant shortly after the arrest and said, essentially, "Swift got your ass on this one."

Just before the stolen goods incident in Michigan, the IRS had been investigating Defendant and his then-wife, Mihaela Pricop ("Ms. Pricop"), for depositing large amounts of cash and under-reporting their income across several years of tax filings. Eventually, Ms. Pricop was charged with several counts of "structuring" for repeatedly depositing significant sums of cash in amounts less than $10,000 to evade financial reporting requirements. Defendant and Ms. Pricop were also charged with making purchases using money derived from unlawful activity (i.e., from the interstate transportation of stolen property). Such purchases included a Ferrari, cashier's checks, private school tuition, and real property.

In 2018, Defendant pleaded guilty to one count of interstate transportation of stolen goods for the February 2015 incident ("stolen goods conviction"), and one count of aiding or assisting the preparation of a false tax return ("tax conviction"). Doc. 26 at 3. The court in the Eastern District of Michigan sentenced Defendant to time served—slightly over two years in custody—and one year of supervised release. *Id.* As part of his sentence, Defendant also agreed to pay $501,956 in restitution to the IRS. The government alleges Ms. Pricop ultimately fled to Romania and remains abroad. Doc. 54 at 3. In January 2024, the Eastern District of Michigan dismissed the indictment against Ms. Pricop. *United States v. Mihaela Pricop*, 2:17-CR-20188-TGB-2, Order Granting Motion to Dismiss Indictment, Doc. 56 (E.D. Mich. January 4, 2024).

**II.     Admissibility of Stolen Goods Investigation and Conviction**

The government filed a notice of intent to introduce "evidence of the circumstances surrounding and the fact of" Defendant's 2018 stolen goods conviction as intrinsic evidence and to show motive for the charged offenses. Doc. 26 at 1.

///

### a. Evidence of the Stolen Goods Conviction and Surrounding Investigation is Inextricably Intertwined with the Charged Offenses and Necessary to Provide a Coherent Narrative.

The government argues that the Michigan stolen goods conviction and surrounding investigation are intrinsic evidence because they are necessary to provide a coherent narrative. Doc. 26 at 3–5. The government argues Defendant's prior interaction with Swift is necessary to explain his charged conduct and repeated targeting of Swift. *Id.* at 5. Defendant argues there is no evidence from the stolen goods conviction or investigation documents to directly connect Defendant to Swift. Doc. 35 at 4. For example, the "bait trailer" (the origin of the stolen goods) was unmarked and belonged to Travelers Insurance, and the stolen goods conviction documents never mention "Swift." *Id.* at 2. But the government intends to offer evidence that connects Swift to Defendant via the stolen goods investigation and conviction.

Evidence of "other acts" need not be analyzed under Rule 404(b)[2] if it is "inextricably intertwined" with the charged offense. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Evidence of other acts is admissible when necessary for "the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* at 1012–13.

Evidence of Defendant's prior interaction with the victim gives necessary context to the charged conduct here. Defendant is accused of repeatedly setting fire to Swift trailers. The jury will wonder why. Defendant denies having any animus toward Swift. But the government has evidence from which a jury could infer otherwise. The government intends to introduce evidence that Defendant knew of Swift's involvement in the investigation that led to the stolen goods conviction. Specifically, the lead investigator for Swift will testify that he told Defendant "Swift got your ass on this one" shortly after Defendant's arrest. If Defendant heard this statement, it is plausible he blames Swift for his stolen goods conviction. Defendant's arguments that the investigator's statement is uncorroborated or dubious speaks more to weight and credibility than admissibility. *See* Doc. 56 at 2. The

---

[2] Cited rules refer to the Federal Rules of Evidence ("FRE") unless otherwise noted.

Swift investigator's testimony, paired with evidence from the stolen goods investigation, will allow prosecutors to present a cohesive story that Defendant targeted Swift trailers as revenge for his stolen goods conviction.

### b. Evidence of the Stolen Goods Investigation and Conviction is Also Admissible Under Rule 404(b)(2) Because it is Not Being Offered to Show Propensity.

While evidence of the stolen goods investigation and conviction is inextricably intertwined with the charges here, the Court also finds it is admissible under Rule 404(b). *See, e.g.*, *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (finding evidence both "inextricably intertwined" and admissible under 404(b)(2)). The Ninth Circuit has "construed Rule 404(b) as being a rule of inclusion. Evidence of other crimes or acts is admissible under Rule 404(b) except where it tends to prove *only* criminal disposition." *United States v. Ayers*, 924 F.2d 1468, 1472–73 (9th Cir. 1991) (internal quotations and citations removed).

Evidence of the stolen goods investigation and conviction would be inadmissible if solely to show Pricop had a propensity for criminal activity. *See* FRE 404(b)(1). But this information is admissible to show motive and identity, which are permissible reasons under Rule 404(b)(2). The Ninth Circuit uses a four-part test for admissibility under Rule 404(b): "(1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged." *Ayers*, 924 F.2d at 1473.

First, Defendant pleaded guilty to the stolen goods charge, which is sufficient evidence for the jury to find he committed that act. The government may also discuss events from the investigation generally. But, to the extent the government intends to directly attribute other acts from the stolen goods investigation to Defendant, it will need to satisfy this "sufficient evidence" element. Second, the stolen goods conviction and surrounding investigation are being offered to prove material issues here: motive and identity. While motive is not an element of arson, malice is. *See* 18 U.S.C. § 844(i); *United States v.*

*Renteria*, 557 F.3d 1003, 1008 (9th Cir. 2009). Defendant's motive is probative of whether he acted with malice. Further, the identity of the arsonist is a material issue here. The stolen goods investigation and conviction establish Defendant's prior relationship with and possible animus toward Swift, the victim here. Third, the events are not too remote from each other. About 2.5 years passed between the end of Defendant's supervised release for the stolen goods conviction (June 2019) and the start of the series of fires the government intends to discuss (October 2021).[3] But, 2.5 years is not too remote given the targeted nature of the arsons, the sheer number, and the regularity with which they occurred. The fourth element—similarity of the offenses to prove intent—is inapplicable here. *See Ayers*, 924 F.2d at 1472–73.

### c. The Danger of Unfair Prejudice Does Not Substantially Outweigh the Probative Value of the Stolen Goods Investigation and Conviction.

Even when the evidence is admissible under Rule 404(b)(2), the Court must still balance the probative value of the stolen goods investigation and conviction evidence against the dangers of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* FRE 403.

"[E]vidence of prior criminal acts is highly prejudicial." *Dickson v. Sullivan*, 849 F.2d 403, 408 (9th Cir. 1988). But the stolen goods investigation and conviction is relevant to understanding Defendant's relationship with Swift. "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (emphasis added) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)). Here, the danger of unfair prejudice does not substantially outweigh the probative value of the stolen goods investigation and conviction. The stolen goods investigation and conviction provide essential context for Defendant's relationship with the victim and a plausible motive for the charged conduct.

---

[3] The first alleged arson by Defendant occurred about one year after the end of his supervised release (in June 2020), but at trial the government does not intend to discuss fires that occurred before October 2021. *See* Doc. 89-6 at 2.

### III. Admissibility of Tax Investigation and Conviction

The government provided notice of its intent to introduce "evidence of the circumstances surrounding and the fact of" Defendant's 2018 tax conviction. Doc. 26 at 1. The government intends to introduce evidence of the tax investigation and conviction in its case in chief. The government argues Defendant set the fires as revenge, not only for the stolen goods conviction, but for the tax conviction too. Doc. 114 at 25–26; Doc. 81 at 2. However, the evidence shows the IRS was already investigating Defendant and his wife for tax issues before Defendant was implicated in the stolen goods investigation. Doc. 114 at 25–26. The government suggests Defendant could have been mistaken and conflated the consequences of the tax investigation (i.e., losing his luxurious lifestyle) with those of the stolen goods investigation. *Id.* at 26, 30. But this theory is speculative. The two investigations were resolved by a single plea agreement, but they arose from separate crimes. The fact that the two investigations were resolved on the same day through a plea agreement is an insufficient connection to make the tax investigation relevant here. Unless there is more evidence to support a link between the two investigations or connect Swift to the tax investigation, the government will not be permitted to argue Defendant's "misunderstanding" of the tax conviction and its consequences motivated him to target Swift.

That said, the fact of Defendant's tax conviction will be admissible if Defendant testifies because it is evidence of his character for truthfulness. Under Rule 609, evidence of a witness's prior crime is admissible to attack the witness's character for truthfulness if an element of that prior crime includes a dishonest act or false statement. The tax conviction plea agreement states, "Defendant knew that his 2013 tax return was false as to a material matter" and "Defendant acted willfully." Plea Agreement, *United States v. Pricop et al.*, 2:17-cr-20188-VAR-1, CMECF Doc. 46 at 2–4 (E.D. Mich. March 29, 2018). A tax conviction under 26 U.S.C. § 7206(2) qualifies as a dishonest act or false statement. *United States v. Little*, No. CR 08-0244 SBA, 2012 WL 2563796, *6–7 (N.D. Cal. June 28, 2012) (A prior conviction for filing a false tax return is "clearly admissible as a crime of

dishonesty under Rule 609(a)(2)."). Thus, if Defendant chooses to testify, the tax conviction will be admitted under Rule 609. This could also cause the Court to revisit the above ruling regarding the admissibility of the tax investigation and conviction.

### IV.     Admissibility of Michigan Documents

Defendant filed a motion to preclude the government from offering documents related to the tax and stolen goods investigations (e.g., criminal complaint, indictment, plea agreement, judgment) ("Michigan Documents"). Doc. 76. For example, the indictment contains 25 charges, including unproven allegations against Defendant, and several tax-related charges solely against Ms. Pricop. *Id.* at 2–3. The plea agreement references the dismissed charges, the $501,956 Defendant must pay in restitution to the IRS, and the potential punishment for nonpayment. *Id.* at 3–4. Defendant argues this information is irrelevant and/or prejudicial. Based on the evidence thus far, the Court tentatively agrees.

Only the stolen goods conviction is inextricably intertwined with the present case. To the extent the government seeks to admit any of the Michigan Documents, the documents would need to be sanitized to include information only about the stolen goods charge for which Defendant pleaded guilty.

The remaining allegations and tax conviction discussed in the Michigan Documents have little relevance to the charges here. Further, that material is unfairly prejudicial and risks causing a mini trial over information of questionable probative value. *See* FRE 403. In other words, unless the government can show the other allegations and tax conviction (1) are relevant to the charges here and (2) clear the four-part *Ayers* test, any reference to those events in the Michigan Documents must be sanitized before admission into evidence.

While the Court finds parts of the Michigan investigations, convictions, and documents tentatively admissible, this is not a license to extensively cover Defendant's conduct from his time in Michigan. The Court will limit evidence at trial under Rule 403 if it finds such evidence is wasting time, confusing the issues, or becoming unnecessarily cumulative.

///

V.   Conclusion

Accordingly, consistent with the above,

**IT IS ORDERED granting in part and denying in part** Defendant's Motion to Suppress Other Act Evidence (Doc. 35) and **granting in part and denying in part** Defendant's Motion in Limine to Preclude (Doc. 76).

Dated this 2nd day of July, 2025.

John C. Hinderaker
United States District Judge