1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  United States of America,                    No. CR-22-02747-001-TUC-JCH (EJM)

10                    Plaintiff,                 **ORDER**

11  v.

12  Viorel Pricop,

13                    Defendant.

14

15         Before the Court are Defendant's Objections to the Presentence Report (PSR)

16  (Doc. 194). Defendant objects to the PSR's base offense level determination, criminal

17  history calculation, descriptions of offense conduct, and listed restitution amounts.[1] *See id.*

18  The Court will sustain in part and overrule in part Defendant's objections as follows.

19  **I.    Base Offense Level** [2]

20

21  [1] The Court will address Defendant's objection to the restitution amounts at sentencing.

22  [2] Defendant argues that under *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Ameline*, 376 F.3d 967 (9th Cir.2004), it would be a violation of Defendant's Sixth Amendment rights for the Court, rather than a jury, to find Defendant acted knowingly. Defendant cites to *Ameline I* for this argument, a decision that was vacated and amended after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Ameline*, 409 F.3d 1073, 1076 (9th Cir. 2005) (en banc). *Booker* was decided to determine whether *Blakely* applied to the U.S. Sentencing Guidelines, and the Court held that, because the Guidelines were mandatory, it did. *See* 543 U.S. at 226. However, *Booker* also made the Guidelines advisory. *Id.* An en banc Ninth Circuit panel reheard *Ameline* post-*Booker* and held that "[s]tanding alone, judicial consideration of facts and circumstances beyond those found by a jury or admitted by the defendant does not violate the Sixth Amendment right to jury trial. A constitutional infirmity arises only when extra-verdict findings are made in a mandatory guidelines system." *See* 409 F.3d at 1077–78. Because the tension in *Ameline I* was resolved by *Booker*, the Court is permitted to make factual findings during sentencing and must make those finding by a preponderance of the evidence. *See United States v. Lucas*, 101 F.4th 1158, 1162 (9th Cir. 2024) (en banc).

.

1    The PSR sets Defendant's base offense level for each count at 24 under the

2    Guideline for violations of 18 U.S.C. § 844(i), U.S.S.G. § 2K1.4, because "the offense

3    created a substantial risk of death or serious bodily injury to any person other than a

4    participant, and that risk was created knowingly." Doc. 204 at 6. Defendant argues that

5    because the jury did not make a finding that Defendant "knowingly" created such a risk,

6    the correct offense level under U.S.S.G. § 2K1.4 is 20.

7    The Guidelines do not define knowingly, but in the Ninth Circuit, a defendant acts

8    knowingly if "(1) it is practically certain that [his] actions would cause a substantial risk of

9    death or serious injury, and (2) [he] was aware of that fact." *United States v. Beardslee*,

10   197 F.3d 378, 389 (9th Cir. 1999) (citing *United States v. Karlic*, 997 F.2d 564, 569

11   (9th Cir. 1993)). A defendant is aware that his actions would create a substantial risk if he

12   is aware "(1) that the factors that present a substantial risk of death or serious injury are

13   practically certain to exist, and (2) that in view of those factors, it is practically certain that

14   his actions will create a substantial risk." *Karlic*, 997 F.2d at 564 (upholding finding that

15   Defendant knowingly created a substantial risk of death or serious bodily injury where he

16   used explosives in an area where and at a time when he had previously seen people present);

17   *compare United States v. Farish*, 535 F.3d 815, 825 (8th Cir. 2008) (defendant acted

18   knowingly under Ninth Circuit standard where he repeatedly asked an accomplice to start

19   fires at homes in residential areas and was upset that not enough damage was done), *with*

20   *Beardslee*, 197 F.3d at 389 (defendant did not act knowingly where the arson occurred in

21   the middle of the night at a warehouse that was located in a non-residential area and not

22   immediately adjacent to any neighboring buildings).

23   Here, Defendant's acts certainly created a substantial risk of serious injury or death.

24   Defendant set fire to at least 19 trailers, many of which were attached to trucks with

25   sleeping drivers inside. The three fires that occurred in the District of Arizona fit that

26   pattern. The Court saw photos and videos and heard evidence concerning these three fires.

27   The fires Defendant set in Arizona were significant and caused serious destruction—the

28   Court saw evidence that at least one of the fires caused the truck's tires to blow up. The

.

Court also heard from the drivers, who were sleeping in their trucks at the time Defendant set the Arizona fires, about the extensive destruction and fear Defendant caused. There is no question that the fires here created a substantial risk of death or serious bodily injury, and Defendant does not dispute this. Defendant set multiple fires and necessarily had to know how destructive they were. Because of his experience as a trucker, Defendant was also aware that drivers were very likely sleeping in their vehicles when he set the fires in the middle of the night. Defendant proved he knew this when he recorded a video where he attempted to wake a sleeping driver while watching one of his fires. Based on this evidence, the Court finds Defendant knowingly created a risk of death or serious bodily injury under U.S.S.G. § 2K1.4 when he intentionally set the Arizona fires. The objection is overruled.

## II.    Criminal History

### A. Misdemeanor Theft Conviction

The PSR assessed one criminal history point for Defendant's prior misdemeanor theft conviction in Vandalia, Illinois. *See* Doc. 204 at 9. Defendant argues this offense is similar to the offense of issuing an "insufficient funds check" and should be excluded from computation under U.S.S.G. § 4A1.2(c). Doc. 194 at 3–5.

Under § 4A1.2(c), there are several listed offenses and "offenses similar to them" that are only counted for purposes of determining criminal history if the sentence was at least one year probation or 30 days in jail or the prior offense is similar to the instant offense. One of the offenses covered by this exception is "insufficient funds check." U.S.S.G. § 4A1.2(c)(1). The guidelines advise that when determining whether a prior offense is similar to a listed offense,

> the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.2 cmt. 12. The Ninth Circuit has previously found that a shoplifting offense

- 3 -

.

(resulting in a $200 fine and 16 hours of community service) was similar to an insufficient funds check under Nevada law. *United States v. Lopez-Pastrana*, 244 F.3d 1025 (9th Cir. 2001). Using the considerations suggested by the guidelines, the Ninth Circuit reasoned that "[b]oth shoplifting and insufficient funds check are punished under the same provision of Nevada law," "[t]he penalty for the two crimes is identical and depends entirely on the value of the property taken," and "the two offenses share many of the same elements." *Id.* at 1028.

Here, Defendant was convicted of misdemeanor theft under 720 ILCS 5/16-1 for siphoning about $540 in fuel from several semitruck trailers and paid a §757 fine. Doc. 204 at 9.[3] A person commits theft under 720 ILCS 5/16-1 if, relevant here, he "obtains or exerts unauthorized control over the property of the owner." A person is guilty of writing a bad check under Illinois law when he knowingly writes a check that will not be paid "[w]ith the intent to obtain control over property or to pay for property, labor or services of another." *See* 720 ILCS 5/17-1(B). The sentences under both statutes depend on the amount stolen. *See* 720 ILCS 5/16-1(b); 5/17-1(d).

The Court sees both reasons to include Defendant's retail theft conviction in his criminal history calculation and reasons to exclude the conviction. Unlike in *Lopez-Pastrana*, under Illinois law, general theft is not prosecuted under the same statute—or even the same article—as bad checks. Illinois law also prosecutes retail theft, or shoplifting, separately from general theft, and Defendant's conduct of siphoning hundreds of dollars worth of fuel is, in many ways, distinguishable from a minor shoplifting charge. If every misdemeanor theft conviction was meant to be excluded from criminal history computations, larceny would be listed as an excluded offense under § 4A1.2(c)(1). But like in *Lopez-Pastrana*, convictions for theft and bad checks under Illinois law share similar elements, and the punishments are similar and determined by the value of the property taken. In this case, the Court will err on the side of lenity and exclude Defendant's misdemeanor theft conviction from the criminal history calculation. The objection is

[3] Illinois law prosecutes retail theft under a separate statute: 720 ILCS 5/16-25– 5/16-28.

.

1  sustained.

2  **B. California Arson Conviction**

3  The PSR assessed six criminal history points for Defendant's arson conviction in

4  the Central District of California. *See* Doc. 204 at 10–11. Defendant and the Government

5  agree this conviction should not be counted for criminal history points because the fires

6  from the California conviction were part of the same spree as the fires in the instant offense

7  and some of the California fires occurred after the fires at issue here. *See* Doc. 194 at 5–6;

8  Doc. 197 at 2–3. Probation argues that because Defendant was sentenced in the California

9  case before the instant sentencing, his California sentence is a "prior sentence" under

10  U.S.S.G. § 4A1.1 and should be counted as criminal history.

11  *1. Applicable Law*

12  Under U.S.S.G. § 4A1.1, criminal history points are calculated based on each "prior

13  sentence of imprisonment." "Prior sentence" is defined as "any sentence previously

14  imposed upon adjudication of guilt . . . for conduct not part of the instant offense."

15  § 4A1.2(a)(1). The application notes clarify that "[a] sentence imposed after the

16  defendant's commencement of the instant offense, but prior to sentencing on the instant

17  offense, is a prior sentence if it was for conduct other than conduct that was part of the

18  instant offense." § 4A1.2 cmt. 1. Conduct that is part of the instant offense is conduct that

19  is relevant to the instant offense under § 1B1.3. § 4A1.2 cmt. 1.

20  Section 1B1.3 determines what is considered "relevant conduct" for purposes of

21  computing the guideline range. Primarily, an act or omission is considered relevant conduct

22  under § 1B1.3 if the defendant commits the act or omission "during the commission of the

23  offense of conviction, in preparation for that offense, or in the course of attempting to avoid

24  detection or responsibility for that offense." § 1B1.3(a)(1). Certain acts or omissions that

25  don't meet the requirements of § 1B1.3(a)(1) but "were part of the same course of conduct

26  or common scheme or plan as the offense of conviction" may also be counted as relevant

27  conduct, but only with respect to offenses that require grouping under § 3D1.2(d).

28  § 1B1.3(a)(2).

.

Under U.S.S.G. § 3D1.2, "[a]ll counts involving substantially the same harm shall be grouped together." Counts involve substantially the same harm when they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."  § 3D1.2(b). Counts should also be grouped "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss . . . or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." § 3D1.2(d). Section 3D1.2(d) provides a list of Guidelines under which offenses should be grouped. Offenses under § 2K1.4 are not included in this list.

*2. Analysis*

To decide whether Defendant's Central District of California arson conviction should be counted as criminal history, the Court must first determine whether the conviction constitutes a prior sentence under § 4A1.1. Because Defendant was sentenced for the fires in California before the instant sentencing, the Court holds that it does. Next, the Court determines whether the conduct underlying the California conviction is conduct that is "part of the instant offense," or relevant conduct under § 1B1.3. Because each fire was charged as a separate offense, the Court does not consider the California fires to have been committed during the commission of, in preparation for, or to avoid responsibility for the fires in the District of Arizona under § 1B1.3(a)(1). To determine if the California fires can be considered relevant conduct under § 1B1.3(a)(2), the Court must determine if the offenses require grouping under § 3D1.2(d).

Here, each fire Defendant set was "part of a common scheme or plan," but each fire involved at least one distinct victim. Swift Transportation was a victim of all the fires, but looking at the District of Arizona fires, the driver of each truck defendant set ablaze is also a victim. Further, the application notes specify that § 3D1.2(b) applies only when the offenses can be considered to represent "essentially one composite harm." § 3D1.2(b) cmt. 4. According to the notes, a "robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm."

.

*Id.* The Court finds that Defendant's multiple fires are akin to multiple robberies. Accordingly, it appears that § 3D1.2(b) does not apply. The California fires are also not required to be grouped with the instant fires under § 3D1.2(d) because the offense level under § 2K1.4 is not determined based on aggregate harm and § 2K1.4 is not written to cover continuous behavior. Offenses under § 2K1.4 are also not included in the list of guidelines that require grouping under § 3D1.2(d).

Because the offenses do not require grouping, the California fires are not part of the instant offense as defined by § 1B1.3(a)(2), and the Defendant's conviction constitutes a prior sentence for the purpose of calculating criminal history. Accordingly, the objection is overruled. Still, the Court understands the point the Government makes in its response and acknowledges the tension created by adding six levels for conduct that could have been charged concurrently with the instant charges. The Court will account for this concern when deciding Defendant's sentence and the extent to which the sentence in this Court will run concurrent or consecutive to the sentenced imposed in Case Number 5:22-CR-00257 out of the Central District of California.

**III.    Offense Conduct**

Defendant objects to certain information contained in the "Offense Conduct" section of the PSR that was not presented to the jury and argues the PSR should reflect only those facts found by the jury. Doc. 194 at 6–7.

The "Offense Conduct" section of the PSR provides a narrative of Defendant's actions associated with the instant offenses, including conduct giving context for Defendant's motivation for committing the offenses. *See* Doc. 204 at 3–5. Defendant does not contest the accuracy of this information, and again, the Court is permitted to consider facts not explicitly found by the jury. *See also Rita v. United States*, 551 U.S. 338, 352 (2007) ("This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence. Nor do they prohibit the sentencing judge from taking account of the Sentencing Commission's factual findings or recommended sentences."). The Court is

.

sentencing Defendant only for the fires started in the District of Arizona, and only those fires are relevant to the guideline range, other than for criminal history purposes. But the Court can and must consider the other fires as important context in this case to exercise its sentencing discretion. The other fires inform the Court of Defendant's revenge motivation and the extent of the danger he presents to the community. The Court finds the facts presented in the PSR are supported by the record and relevant. Defendant's objection is overruled.

## IV.    Order

Accordingly,

**IT IS ORDERED overruling in part and sustaining in part** Defendant's Objections to the Presentence Report (Doc. 194) consistent with the above Order.

Dated this 28th day of January, 2026.

John C. Hinderaker
United States District Judge